UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**BARBARA JEFFERSON,**                                           :
                                                                 :
                                    Plaintiff,                   :
                                                                 :  **MEMORANDUM DECISION**
                – against –                                      :  **AND ORDER**
                                                                 :
**NANCY A. BERRYHILL,** Commissioner                             :  18-CV-07425 (AMD)
of Social Security,                                              :
                                    Defendant.                   :
                                                                 :
                                                                 :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff appeals the Commissioner of Social Security's decision that she is not disabled for purposes of receiving Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On November 10, 2014, the plaintiff filed a *pro se* application for SSI. She claimed disability beginning on the date of her application due to severe depression, post-traumatic stress disorder, bipolar disorder, chronic insomnia and lumbar and cervical radiculopathy. (Tr. 78, 141.)

In 2014, the plaintiff began treatment for depression, anxiety, bipolar disorder, and panic attacks. (Tr. 326-328.) Many of her symptoms started after her partner died; she lost her job, and a fire destroyed all of her belongings. (Tr. 330.) She was prescribed Seroquel, Zoloft and Xanax to manage her symptoms. (Tr. 313.) That same year, she also developed pain in her back and shoulders and numbness in her hands; she was diagnosed with lumbar radiculopathy and

1

osteoarthritis. (Tr. 390-92, 605-06.) In August of 2017, after her initial hearing but before the ALJ issued a decision, she was injured in a car accident, which caused her back, neck, and shoulder pain to worsen. (Tr. 71-73.) She developed "sharp, stabbing" pain that "increased [when] standing, sitting, lifting, bending" and made it difficult to walk. (Tr. 321.)

The plaintiff's claim was denied on November 4, 2015. (Tr. 137-141.) Administrative Law Judge (ALJ) Mark Solomon held a hearing on August 11, 2017, at which a vocational expert testified. (Tr. 99-123.) The plaintiff did not have an attorney but was accompanied by a non-attorney representative. (*Id*.) At the hearing, the plaintiff gave ALJ Solomon additional records from treatment she received in the month leading up to the hearing. (Tr. 78-98.) Specifically, the plaintiff submitted a psychiatric medical report from July 18, 2017 from her psychiatrist, Dr. Joseph Voigt, who had been treating the plaintiff since 2015. (Tr. 90-97.) Dr. Voigt said that the plaintiff had not responded adequately to treatment and diagnosed the plaintiff with recurrent major depressive disorder. (*Id*.) He observed that the plaintiff's "depression, including fatigue, poor concentration, anhedonia, interfere with her ability to perform effectively in any sustained job," and that she had been unable to work since 2012 due to her mental condition. (Tr. 96.)[1] The plaintiff also submitted a general medical report by a physician's assistant, Maria Jaime, from the day before the hearing. (Tr. 78-80.) Ms. Jaime had been treating the plaintiff since 2014 at a local family health center and diagnosed the plaintiff with depressive disorder recurrent episode, disruptive mood dysregulation disorder, bipolar related disorder, and persistent depressive disorder with dysthymia. (*Id*.) She noted that the plaintiff had "severe back pain, sleep apnea with insomnia, [and] severe depression." (Tr. 79.)[2]

---

[1] Anhedonia is a "pervasive loss of interest in almost all activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A.
[2] Ms. Jaime's notes included a statement from the plaintiff assessing her ability to complete work-related activities.

On September 21, 2017, the ALJ denied the plaintiff's application. (Tr. 54-66.) The ALJ concluded that while the plaintiff had severe impairments—depression, lumbar disc disease and obstructive sleep apnea—she was not eligible for SSI because she did not meet the criteria listed in the Social Security regulations. (Tr. 57.) The ALJ found that the plaintiff's mental functioning was only mildly or moderately limited in certain areas, and that while she had some physical limitations from her back and shoulder pain, "[her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 60, 65-66.) He determined that the plaintiff had the residual functional capacity ("RFC") to perform medium work, although she would have to avoid unprotected heights and hazardous machinery. (Tr. 61.) ALJ Solomon did not accept the new evidence the plaintiff submitted, concluding that her "excuse" for not submitting the new evidence five days prior to the hearing was "unpersuasive" given "the virtually normal mental status examinations, and the minimal limitations documented in her treatment notes[.]" (Tr. 57.)

Two weeks after the hearing, the plaintiff was injured in a car accident. (Tr. 7.) Following the accident, the plaintiff submitted additional evidence to the Appeals Council documenting her injuries from the accident, which she claimed exacerbated her existing lumbar and cervical radiculopathy. (Tr. 6-40, 43-50.) She submitted treatment records ranging from August 2017 through March 2018 from orthopedist Dr. Colin Clarke, neurologist Dr. Alla Mesh, and functional and orthopedic assessments from Dr. Alexander Zaitsev and Dr. Danilo Humberto Sotelo-Garza. (Tr. 6-40.) These records include additional diagnoses of cervical, lumbar and thoracic sprains, post-concussion headache, and additional knee and shoulder injuries. (Tr. 6-40,

3

70-77.) She also submitted additional medical records from 2018 from her psychiatrist, Dr. Voigt, and from her neurologist, Dr. Alla Mesh, from 2016.

The Appeals Council denied her request for review, finding that the new evidence did not show "a reasonable probability that it would change the outcome of the decision." (Tr. 1-5.) The plaintiff appealed on December 28, 2018. (ECF No 1.) Both parties moved for judgment on the pleadings. (ECF Nos. 13, 14, 17.)

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case," the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188-189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (internal citations omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

# DISCUSSION

The plaintiff challenges the decisions by the ALJ and the Appeals Council declining to review new evidence she submitted regarding her psychological and physical limitations. She also claims that the ALJ did not appropriately weigh the opinions of two of her treating physicians in determining the plaintiff's RFC. I agree that remand is appropriate.

## I. Untimely Evidence Submitted to the ALJ

Under 20 C.F.R. § 416.1435(a), an individual or his counsel must "inform [the Commissioner] about or submit any written evidence" of disability "no later than 5 business days before the date of the scheduled hearing." *Id.* If a claimant does not comply with this five-day rule, the ALJ "may decline to consider or obtain the evidence" unless certain circumstances apply. 20 C.F.R. § 416.1435(a)-(b). Section 416.1435(b)(2) waives the five-day rule if a claimant has "a physical, mental, educational, or linguistic limitation(s) that prevented [her] from informing us about or submitting the evidence earlier." *Id.*

The plaintiff relied on this exception and gave ALJ Solomon two records reflecting additional treatment she received in the month leading up to the hearing: a medical report from July 18, 2017 from her psychiatrist, Dr. Joseph Voigt, who had treated the plaintiff since 2015 (Tr. 90-97), and a general medical report by physician's assistant Maria Jaime from the day before the hearing. (Tr. 78.) The ALJ asked why the plaintiff did not notify him earlier about these records; the plaintiff replied that her "psychiatric problem[s]" prevented her from getting the records to her representative before the hearing, because she "just [doesn't] answer [her] phone." (Tr. 102-3.) Citing the five-day notice requirement, the ALJ reserved decision on whether he would accept the additional evidence and ultimately declined to do so; he found her

5

"excuse . . . unpersuasive" given "the virtually normal mental status examinations, and the minimal limitations documented in her treatment notes." (Tr. 57, 103.) This was error.

The record supported the plaintiff's claim that her mental limitation kept her from meeting the five-day rule. The plaintiff's disability claim was premised on her severe depression, anxiety, and panic attacks. During the hearing, the plaintiff's representative stated that her depression makes it "hard" for her to "function . . . she [locks] herself up in the house, and she doesn't want to see anybody, and she doesn't want to come in contact with the outside world." (Tr. 104.) The plaintiff also testified that her "anxiety stops [her] from doing things." (Tr. 110.) In view of these circumstances, her testimony that it was her mental disability that prevented her from getting the records to her representative was sufficient for the ALJ to waive the five-day notice requirement. Because this condition meets the exception at 20 C.F.R. § 416.1435(b)(2), the ALJ did not have discretion to exclude this additional evidence.[3]

Even if the ALJ did not believe the plaintiff, he had an affirmative duty to develop a complete medical record before making a disability determination. *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). "In light of that duty, an ALJ cannot simply choose to disregard evidence that the ALJ knows about—and about which the claimant has informed the ALJ—before the deadline." *Drogo v. Comm'r of Soc. Sec.*, No. 6:18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019). This obligation includes making reasonable efforts to obtain a "report that sets forth the opinion of that treating physician as to the existence, the nature, and severity of the claimed disability." *Peed v. Sullivan*, 778 F. Supp.

---

[3] The ALJ rejected the additional evidence because of the plaintiff's "virtually normal mental status examinations . . . and . . . minimal limitations," (Tr. 57), a conclusion that was inconsistent with his findings that the plaintiff has "severe" depression and anxiety. (Tr. 57, 60-61.)

1241, 1246 (E.D.N.Y. 1991) ("It is the opinion of the treating physician that is to be sought," and "his opinion as to the existence and severity of a disability that is to be given deference.").

The plaintiff claims she is disabled because she has severe depression, post-traumatic stress disorder, and anxiety. The ALJ concluded that the plaintiff was "exaggerating her symptoms" (Tr. 58) and that her conditions did not prevent her from working, but the record did not include statements from the plaintiff's psychiatrist, Dr. Voigt, who had been treating the plaintiff since 2014 and who observed that the plaintiff's condition causes "fatigue, low energy, poor concentration, anhedonia [which] interfere with her ability to perform effectively in any sustained job." (Tr. 96.) Nor did the ALJ consider diagnoses of the plaintiff's primary care provider, Maria Jaime, who had been treating the plaintiff since August of 2014, and diagnosed the plaintiff with bipolar disorder and disruptive mood dysregulation, as well as severe back pain. (Tr. 325-408.) The ALJ may very well have come to a different conclusion had he considered this additional evidence. On remand, the ALJ should reconsider the plaintiff's RFC in light of Dr. Voigt's opinions about her condition, and Ms. Jaime's treatment notes and diagnosis. To the extent he needs additional information from either provider, he should request it so that the record reflects the full range of the plaintiff's medical issues and symptoms, as well as the resulting limitations on her daily functioning.

## II.     New and Material Evidence Submitted to the Appeals Council

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). Evidence is "new" if the Commissioner has not considered it previously and it is "not merely cumulative of what is already in the record." *Corona v.*

*Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *19 (E.D.N.Y. Mar. 24, 2017) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative', and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently.'" *Id.* (quoting *Williams v. Comm'r of Soc. Sec.*, 236 Fed. App'x 641, 644 (2d Cir. 2007) (citation omitted)). Finally, good cause exists where the new evidence "surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of [the prior] proceeding." *Id.* (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (citation and quotation omitted)).

The plaintiff says that the Appeals Council should have remanded so that the ALJ could consider a 2018 medical report from Dr. Voigt, additional records from three physicians who treated her after a 2017 car accident, and 2016 treatment notes from a pain management physician. (Tr. 6-40, 43-50.) Apart from the 2016 treatment notes, each of these records was prepared after the ALJ's decision and did not exist at the time of the hearing. Therefore, "there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).[4] The only remaining question is whether any of these records were material. I find that they were, and that remand is appropriate so that the ALJ can consider these additional records in evaluating the plaintiff's RFC.

---

[4] Additionally, a showing of good cause is not required here because these records became part of the administrative record when they were submitted to the Appeals Council on November 21, 2017. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review); *see* 20 C.F.R. §§ 404.970(b), 416.1470(b) (authorizing claimants to submit new evidence to the Appeals Council without a "good cause" requirement).

In April of 2018, Dr. Voigt—who had been treating the plaintiff for nearly four years—prepared a psychiatric functional assessment diagnosing the plaintiff with bipolar disorder. (Tr. 44-50.)[5] Dr. Voigt opined that the plaintiff had moderate or marked limitations with respect to various psychological factors, including understanding, remembering or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself.[6] (Tr. 45-47.) The report notes that the plaintiff is easily triggered by her physical limitations, "[has] difficulties being redirected, a low-tolerance and patience for others, and can be easily agitated, upset [and] angered." (Tr. 44-45.) Additionally, Dr. Voigt noted that the plaintiff's back pain exacerbates her depression and that "when she's in pain, she's easily disappointed and . . . becomes angry and depressed." (Tr. 49.)

The contents of Dr. Voigt's report were material in assessing the severity and nature of the plaintiff's mental condition. (Tr. 44-50.) His observations and diagnosis of the plaintiff contradict the ALJ's conclusion that the plaintiff was "exaggerating her symptoms" and reflect important observations about the plaintiff's responsiveness to treatment. The Appeals Council declined to review the report because it came after the relevant period, but "a retrospective opinion of a treating physician is highly probative, and the mere fact that it was made months after the relevant period is insufficient reason to disregard it." *Maloney v. Berryhill*, No. 16-CV-3899, 2018 WL 400772, at *5 (E.D.N.Y. Jan. 12, 2018). Dr. Voigt treated the plaintiff for nearly four years; his 2018 report describes the progression of the plaintiff's mental health issues, how her condition limited her ability to work and interact with others and connects her worsening

---

[5] The evaluation was also prepared and signed by Reginald Stapleton, a clinical social worker. (Tr. 44-50.)
[6] Dr. Voigt also observed that the plaintiff has no limitations in her ability to maintain personal hygiene and attire appropriate to work, and only a mild limitation in her ability to complete tasks in a timely manner. (Tr. 47).

9

mental condition to her back pain. *See, e.g., Tracy v. Apfel*, No. 97-CV-4357, 1998 WL 765137, at *6 (E.D.N.Y. Apr. 22, 1998) (new records are deemed material when they are likely to warrant additional restrictions in the relevant domains of mental functioning). "[W]hen . . . a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of the [plaintiff's] condition, evidence of that diagnosis is material and justifies remand." *Lisa*, 940 F.2d 40, 44 (2d Cir. 1991) (citations and quotations omitted). Dr. Voigt's 2018 report lends credibility to the plaintiff's claims that her back pain and depression are significant barriers to her ability to function in daily activities and interact with other people; his assessment could very well have led the ALJ to reach a different RFC conclusion. *Lopez v. Astrue*, No. 09-CV-1678, 2011 WL 6000550, at *10-12 (E.D.N.Y. Nov. 28, 2011) (new records which have a reasonable possibility of affecting the analysis of credibility are material).[7] Because there is a reasonable possibility that Dr. Voigt's opinion "would have influenced the [Commissioner] to decide the claimant's application differently," *Williams*, 236 F. App'x at 644, the Appeals Council should have considered his 2018 report.

The plaintiff also submitted additional records about medical treatment she received after the car accident on August 23, 2017, when she was a passenger in a vehicle that was struck head-on by another vehicle. (Tr. 24.) Orthopedist Dr. Colin Clarke treated the plaintiff until March of 2018. She complained of pain in both knees, her shoulder, and in her neck and lower back. (Tr. 12.) In September and October of 2017, imaging confirmed that the plaintiff had a torn meniscus and bulging and herniated discs in her lumbar and cervical spine. (Tr. 12-13.) Dr. Clarke began

---

[7] Dr. Voigt's comments about the plaintiff's diagnosis of bipolar disorder are also consistent with the plaintiff's earlier progress notes, which noted her euthymic mood, a symptom of bipolar disorder. His subsequent diagnosis of bipolar disorder may help explain why, as the ALJ observed, the plaintiff sometimes presented as stable and did not complain of any pain. (Tr. 61.)

trigger point injections to provide some relief for the plaintiff's pain and prescribed physical therapy, acupuncture, and chiropractic care. (Tr. 20-24.)

A month later, in September of 2017, the plaintiff went to an orthopedic specialist, Dr. Danilo Humberto-Sotelo Garza, began treating the plaintiff in connection with her back and neck pain. (Tr. 73.) Dr. Garza confirmed the plaintiff's below-normal flexion in her cervical and lumbar spine and diagnosed her with a right knee media meniscus tear, cervical and lumbar sprain, and a left knee sprain. (*Id.*) Dr. Garza also prescribed continued physical therapy and ordered an MRI of the plaintiff's knee. The next month, the plaintiff went to see Dr. Alexander Zaitsev, an anesthesiologist, and Melissa Evans, a nurse practitioner, who treated the plaintiff for "sharp, stabbing" lower back and neck pain. (Tr. 71.) Dr. Zaitsev prescribed chiropractic therapy, a cervical traction device to help the plaintiff sleep better, and lumbar epidural injections. (Tr. 72.) Her cervical and lumbar flexion were below normal ranges, and she had pain in her right knee, cervicalgia, and lower back and disc disorders with radiculopathy. (Tr. 72.)

These records documented the plaintiff's deteriorating condition, as well as her worsening symptoms following the August 2017 car accident. Admittedly, some of the injuries about which the plaintiff complained—for example, her knee injuries, for which she later underwent surgery—were unrelated to her original disability claim. But the records otherwise relate directly to changes in the plaintiff's cervical and lumbar spine from the accident and demonstrate that the plaintiff experienced limited range of motion and increased pain. The records also demonstrate her treating physicians' efforts to treat and manage her pain, including through physical and chiropractic therapy, multiple anti-inflammatory trigger point injections, orthopedic aids and pain medication. (Tr. 70-73.) These doctors' findings and opinions are

11

material to the plaintiff's condition, and had the ALJ considered them, he might have reassessed the plaintiff's RFC. *See Lisa*, 940 F.2d at 44. Remand is therefore appropriate so that the ALJ can evaluate the nature and extent of the plaintiff's disability given this new evidence.

In addition to the new and material evidence the plaintiff submitted which post-dated her 2017 hearing, the plaintiff asked the Appeals Council to remand so that the ALJ could consider a January 13, 2016 note from neurologist Dr. Alla Mesh. (Tr. 74-77.) The record included an earlier July 15, 2014 note from Dr. Mesh (Tr. 390-393); the plaintiff states that she included a partial version of the 2016 note in her original submission, which the ALJ declined to consider, and subsequently submitted a corrected copy of the record to the Appeals Council which included the omitted pages. (*Compare* Tr. 621 *with* Tr. 74-77.) In the full note, the doctor observes that the plaintiff's lower back pain "interferes with [her] activity of daily living" and that the plaintiff "[h]as been having difficulty sitting for long time [*sic*], walking, standing" and "also feels uncomfortable at night." (Tr. 75.) Dr. Mesh observes that the plaintiff has had "severe debilitating pain in the low back for several years" that "interferes with all activities of daily living" and that the plaintiff might be a candidate for nerve block injections if she does not improve. (*Id.*) This evidence is undoubtedly new and material; Dr. Mesh's assessment speaks directly to the plaintiff's condition during the relevant period. The Commissioner's argument that the 2016 report is cumulative of the 2014 report because it makes the same observations and conclusions about the plaintiff's physical condition is unpersuasive. The two reports are not, as the government claims, "essentially identical." (ECF No. 15 at 29.) The notes list different reasons for the medical appointments, and the 2016 note reflects an updated medical history, an updated assessment of the plaintiff's condition and updated recommended treatments. (Tr. 76-77.) Nor do Dr. Mesh's opinions about the plaintiff's condition simply "record[] the [plaintiff's]

own reports of pain." *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (summary order). Therefore, the ALJ should consider these records on remand.

To the extent that Dr. Mesh, Dr. Voigt and Dr. Clarke qualify as treating physicians, the ALJ should evaluate their opinions on remand and accord them controlling weight if they are "well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). If the ALJ decides that these opinions do not merit controlling weight, he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527(c)(2).

## CONCLUSION

Accordingly, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

    s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
March 20, 2020